UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

WILLIAM HERBERT SCHEID and
MARY JEAN SCHEID,

    Debtors.                                                   No. 12-11255-t7

CENTURY BANK,

    Plaintiff,

v.                                                                    Adv. Pro. No. 12-1226-t

WILLIAM H. SCHEID and
MARY JEAN SCHEID,

    Defendants.

## **MEMORANDUM OPINION**

       Plaintiff seeks, inter alia, to have Defendants' discharge denied under 11 U.S.C. §§ 727(a)(3) and (a)(5). Plaintiff has moved for summary judgment on the amount it is owed and on its § 727 claims.[1] The focus of Plaintiff's argument is the disappearance of 13 items of personal property, which in July, 2010 Defendants valued at $325,200. Plaintiff also argues that Defendants cannot show what happened to a $12,000 cash withdrawal, or to the proceeds of a loan from Plaintiff to Defendants' business, Scheid Automotive Group, Inc. Had the personal property and withdrawn cash been on hand when Defendants filed bankruptcy, there would have been a substantial dividend to unsecured creditors. As it is, the estate has no assets.

---

[1] *See* Plaintiff's Motion for Summary Judgment, filed January 22, 2013, doc. 30 (the "Motion"); Defendants' Response in Opposition, filed February 12, 2012, doc. 34 (the "Response"); and Century's Reply in support of the Motion, filed February 25, 2012, doc. 37 (the "Reply").

The Court finds that, although Defendants' records are extremely weak in certain key respects, Defendant have raised enough fact issues in their attempt to justify their record-keeping, and/or explain the loss of assets, to warrant a trial on the merits. The Court therefore denies Plaintiff's motion.

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.[2] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d

---

[2] Fed.R.Civ.P. 56 applies in adversary proceedings. *See* Bankruptcy Rule 7056.

516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.  FACTS

The Court finds that there is no genuine issue of material fact about the following:

1. On February 25, 2011, a Default Judgment was entered in New Mexico's First Judicial District Court in favor of Plaintiff against Defendants, jointly and severally (the "Judgment").

-3-

2. In the Judgment, Plaintiff was awarded (a) a $132,413.77 money judgment against Defendants on a certain promissory note, plus interest from February 12, 2011 at $75.20 per day; (b) a $118,028.82 money judgment against Defendants on a second promissory note, plus interest from February 12, 2011 at $66.93 per day; and (c) a $1,043.53 money judgment against Defendants for fees and costs, plus reasonable attorney fees and costs incurred from February 1, 2011 until all amounts owed under the Judgment are paid in full.

3. Defendants owe Plaintiff the amounts set forth in the Judgment.[3]

4. On July 22, 2010, Defendants submitted a personal financial statement to Plaintiff, certified to be true and correct as of July 1, 2010 (the "Financial Statement").[4]

5. In the Financial Statement, Defendants represented to Plaintiff that in July 2010 they owned the following assets worth the following amounts:

| Asset | Stated Value |
| --- | --- |
| 2009 Dodge Challenger | $42,000 |
| 2008 Dodge Charger Super Bee | $42,000 |
| 1998 Harley Super Glide | $8,000 |
| 1995 Harley Davidson | $17,000 |
| 2007 BMW Motorcycle | $17,000 |
| 2000 Harley Trailer | $2,000 |
| 2008 Honda ATV | $2,000 |
| Tools | $38,000 |
| American Flyer Train Collection | $77,000 |
| Coin Collection | $18,000 |
| Art Collection | $24,700 |
| Jewelry | $20,000 |
| Gun Collection | $17,500 |
| Total | $325,200 |

(together, the "Assets").

---

[3] The Court is not ruling on the reasonableness or allowability of any post-Judgment attorney fees.
[4] Doc. 30-5.

-4-

6. On March 30, 2012, Defendants filed the above-captioned bankruptcy case.

7. None of the Assets is listed on Defendants' Schedule B.

8. In their original Statements of Financial Affairs #10, Defendants only disclosed their transfer of the 2009 Dodge Challenger and the 2008 Dodge Charger.

9. On June 28, 2012, Plaintiff filed this adversary proceeding.

10. On October 19, 2012, Defendants filed an Amended SFA #10, in which they disclosed the disposition of all the Assets.

11. In their Response, and/or in the Amended SFA #10, Defendants stated the following with respect to each Asset:

| Asset | Sales Price | Date of Sale | Buyer | Form of Payment |
|---|---|---|---|---|
| 2009 Dodge Challenger | $31,500 | May, 2011 | Wilfredo Nunez | Wire transfer of $6,500; check(s) of $25,000 |
| 2008 Dodge Charger Super Bee | unknown | February, 2012 | South Point Dodge | Trade in for new car; lien of $14,716.95 paid off |
| 1995 Harley Davidson | $6,000 | May-June, 2011 | Ronald White | cash |
| 1998 [2000][5] Harley Super Glide | $6,000 | May, 2011 | Butch Brieckler | cash |
| 2007 BMW Motorcycle | $11,500 | April, 2011 | Alan O'Neil | ? |
| 2000 [2001] Harley Trailer | $1,500 | May, 2011 | Thomas Maestas | cash |
| 2008 [1996] Honda ATV | $1,800 | August, 2011 | Unknown yard sale buyer | cash |

---

[5] The bracketed dates are from Mr. Scheid's supporting affidavit (the "Scheid Affidavit").

-5-

| Tools | $4,800 | June-July, 2011 | Thomas Maestas | cash |
| American Flyer Train Collection | $18,000 | May-July, 2011 | Unknown yard sale buyers | cash |
| Coin Collection | $7,000 | December, 2010-January, 2011 | Unknown yard sale buyers | cash |
| Art Collection | $8,000 | May-July, 2011 | Unknown yard sale buyers | cash |
| Jewelry | $9,000 | July, 2011 | Alicia Picciafoco (Mr. Scheid's sister) | Funds previously sent to Defendants (the form is not specified) |
| Gun Collection | $10,000 | May-July, 2011 | Unknown yard sale buyers | cash |
| Total | $115,100, plus consideration for 2008 Dodge Charger | | | |

12. On July 29, 2011, Defendants withdrew $12,000 from their People's Bank account.

### III. PLAINTIFF'S CLAIM AMOUNT

It is undisputed that Plaintiff's claim against Defendants is as set forth in finding 2 above. The Court will so order.

### IV. § 727(a)(3) STANDARDS

A. <u>The Statute</u>. Under 11 U.S.C. § 727(a)(3), a debtor is not entitled to receive a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or

-6-

business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

B.   Underlying Policy.

The purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. [*Lansdowne v. Cox (In re Cox)],* 41 F.3d [1294] at 1296 [(9th Cir. 1994)] (citation omitted). The disclosure requirement removes the risk to creditors of "the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records."

*In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008), citing *Burchett v. Myers,* 202 F.2d 920, 926 (9th Cir. 1953).

Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Martin,* 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992); *In re Kearns*, 149 B.R. 189, 190-91 (Bankr. D. Kan. 1992); *see also Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir. 1992); *In re Cox,* 904 F.2d 1399, 1402 (9th Cir. 1990). The provision ensures that trustees and creditors will receive sufficient information to enable them to "trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Martin,* 141 B.R. at 995; *see also In re Shapiro,* 59 B.R. 844, 848 (Bankr. E.D.N.Y. 1986); *In re Pimpinella,* 133 B.R. at 697; *In re Frommann,* 153 B.R. at 116. Records need not be kept in any special manner, nor is there any rigid standard of perfection in record-keeping mandated by § 727(a)(3). *Meridian Bank,* 958 F.2d at 1230; *In re Underhill,* 82 F.2d 258, 259-60 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S. Ct. 9, 81 L. Ed. 402 (1936); *In re Zell,* 108 B.R. 615, 627 (Bankr. S.D. Ohio 1989); *In re Schultz,* 71 B.R. 711, 717 (Bankr. E.D. Pa. 1987); *In re Graham,* 111 B.R. 801 (Bankr. E. D. Ark. 1990). On the other hand, courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs. *In re Frommann,* 153 B.R. at 117; *In re Pimpinella,* 133 B.R. at 698; *In re Shapiro,* 59 B.R. at 848.

*In re Juzwiak*, 89 F.3d 424, 429 (7th Cir. 1996). *See also Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir. 1992) ("the purpose of section 727(a)(3) is to give creditors and

-7-

the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge").

      C.    <u>Creditor's Initial Burden</u>.  Determination of a § 727(a)(3) objection is a two-step process. In the first step, the creditor has the burden of establishing that the debtor's records are inaccurate or inadequate.

> It is up to the creditor to establish a prima facie case for denial of discharge under § 727(a)(3). Only if the creditor accomplishes that initial task does the burden shift to the Debtor to come forward with an explanation for the lack of recorded information.

*McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 241 (Bankr. D. Colo. 2005), citing *PNC Bank v. Buzzelli (In re Buzzelli),* 246 B.R. 75, 117, n. 17 (Bankr. W.D. Pa. 2000) and *Beneficial Mortgage Co. v. Craig (In re Craig)*, 140 B.R. 454, 458 (Bankr. N.D. Ohio 1992). *See also In re Gordon*, 83 B.R. 78, 81 (Bankr. S.D. Fla. 1988) (once creditor shows debtor's records are inaccurate, the burden shifts to the debtor to justify the nonexistence of the records); *In re Hernandez*, 2009 WL 6699684, at *2 (Bankr. S.D. Cal. 2009) (same).

In the Tenth Circuit, the creditor's initial burden of proof is to show that the debtor "failed to maintain and preserve adequate records" and "that the failure made it *impossible* to ascertain [the debtor's] financial condition and *material business* transactions." *In re Brown,* 108 F.3d 1290, 1295 (10th Cir. 1997), *citing In re Folger,* 149 B.R. 183, 188 (D. Kan. 1992) (emphasis added in *Brown*). *See also Phouminh*, 339 B.R. at 241 (same). *Cf. In re Devaul*, 318 B.R. 824, 831 (Bankr. N.D. Ohio 2004) (the "impossibility" test is from *Meridian Bank*, is dicta, and is not supported by the language of § 727(a)(3)).

The records "need not be so complete that they state in detail all or substantially all of the transactions taking place in the course of the business. It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them." *Phouminh*, 339 B.R. at 241, quoting *In re Stewart,* 263 B.R. 608, 615 (10th Cir. BAP 2001).

Proof of fraudulent intent is not part of a creditor's *prima facie* case under 11 U.S.C. § 727(a)(3). *See Kim v. Keeran (In re Keeran),* 2012 WL 1196531, at *8 (Bankr. D.N.M. 2012), citing *Buckeye Retirement Co., LLC v. Bullough (In re Bullough),* 358 B.R. 261, 283 (Bankr. N.D. Tex. 2007) ("the creditor does not have to show intent or recklessness"); *Meridian Bank,* 958 F.2d at 1234 (creditor need not show debtor intended to conceal his financial condition).[6]

D.  Debtor's Burden of Justification. If the creditor establishes its *prima facie* case, the burden shifts to the debtor to justify its lack of records. *Brown,* 108 F.3d at 1295; *Phouminh*, 339 B.R. at 241; *Gordon*, 83 B.R. at 81; *Devaul,* 318 B.R. at 837.

Courts often use the following standard for assessing debtor "justification:"

> The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Meridian Bank*, 958 F.2d at 1231, quoting *In re Wilson*, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983). *See generally Devaul*, 318 B.R. at 836 (thorough analysis of debtor's burden

---

[6] "Of course, if the failure to keep and preserve proper books of account or records is proved to have been in contemplation of the filing of a petition under the Code with intent to conceal, the discharge should be barred in chapter 7, because failure to keep records in such circumstance is unjustifiable." *Collier on Bankruptcy*, ¶ 727.03[3][d], citing *Stewart Enters., Inc. v. Horton (In re Horton),* 621 F.2d 968 (9th Cir. 1980).

-9-

Case 12-01226-t    Doc 39    Filed 03/05/13    Entered 03/05/13 16:25:16 Page 9 of 18

of justification).

It is common to evaluate the debtor's education, sophistication, and experience when considering whether a lack of records is justifiable. *See Eggert v. Sendecky (In re Sendecky)*, 283 B.R. 760, 766 (8th Cir. BAP 2002) (proof that debtor was poorly educated, unsophisticated, and lacking in business experience held to be sufficient justification for lack of records); *Devaul*, 318 B.R. at 838-39 (court found justification based on, inter alia, debtor's limited education and lack of sophistication).

Some courts have combined debtors' justification for a lack of records with debtors' submission of such records as they can find, and/or an oral explanation of their financial condition. *See, e.g., In re Ogden*, 251 B.R. 441, at *6 (10th Cir. BAP 1999) (relying on debtor's testimony about unavailable records to reverse entry of summary judgment against debtor on § 727(a)(3) claim); *Hernandez*, 2009 WL 6699684, at *3 (court gave the debtors an opportunity to explain how they spent cash advances, but held they were unable to do so); *In re Sauntry*, 340 B.R. 848 (Bankr. E.D. Tex. 2008) (court considered debtors' explanation why they operated on a cash basis, and also review debtors' tax returns, pay stubs, credit card statements, and the like, and concluded that debtor's failure to maintain records was justified).

E. <u>Defendants' Argument About "Kept" Records Has No Merit</u>. Defendants argue that § 727(a)(3) does not require written records, only that any written records in existence be retained or "kept." Response, p. 10. The argument fails. It is reasonably clear that the statute uses "keep" in the sense of "maintain a record [i.e.] . . . (*keep* a journal)."[7] *See also Devaul*, 318 B.R. at 833. Furthermore, the law is clear

---

[7] Webster's Third New International Dictionary, definition 2(f) of "keep."

-10-

that at least for sophisticated debtors, there is an affirmative duty to have written records. *See, e.g., In re Kim*, 97 B.R. 275, 280 (Bankr. E.D. Va. 1989) (citing *Goff v. Russell Co.*, 495 F.2d 199, 201 (5th Cir. 1974), the bankruptcy court held that "although full detail is not required, there should be written evidence, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy"); *Gordon*, 83 B.R. at 81 (debtor's level of sophistication made her failure to keep sufficient books and records of her financial condition or business transactions unjustified). While not every debtor is required to have written records, *see, e.g., Simcich v. Haugen (In re Haugen)*, 9 B.R. 4 (Bankr. S.D. Fla. 1980) (day laborer was not required to keep written savings passbook), relatively sophisticated debtors are held to a higher standard, and cannot evade the requirements of § 727 by failing to document their transactions. *See In re Ogden,* 251 B.R. 441, at *6 (while many consumer debtors are not required to keep books, debtors sophisticated in business matters are held to a higher level of accountability).

      F.    <u>Defendants' Argument About Business Transactions Fails</u>. Defendants also argue that they had no obligation to have written records of their sales of the Assets because the sales were not "business transactions." Response, p. 11. This argument has no merit. Section 727(a)(3) in general requires debtors to keep sufficient records that the Court can determine their "financial condition." Included is a requirement for enough information to show that the debtors are not concealing assets. *In re Caneva*, 550 F.3d at 761. For this reason, the case law construing § 727(a)(3) requires individuals as well as businesses to keep reasonable written records of their significant

-11-

transactions. *See Gordon*, 83 B.R. at 81 (discharge denied because debtor had no record of the sale of over $200,000 worth of jewelry, or how she spent the proceeds). *See also Hernandez*, 2009 WL 6699684, at *2 (individual debtors had a duty to show that their lack of records was justified under the circumstances and to provide a satisfactory explanation for their dissipation of cash advances).

V. § 727(a)(5) STANDARDS

A. Statute. Under 11 U.S.C. § 727(a)(5), a debtor is not entitled to receive a discharge if:

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

B. Creditor's Initial Burden. As with § 727(a)(3), the creditor has the initial burden of showing an unexplained loss of a significant asset. *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (10th Cir. BAP 2001), *aff'd*, 35 Fed. Appx. 811 (10th Cir. 2002) (a party objecting to a debtor's discharge under § 727(a)(5) has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred).

"A prima facie case under Section 727(a)(5) has been held to exist where a creditor shows that ... there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy." *Testers v. Carlson (In re Carlson),* 2008 WL 8677441, at * 5 (10th Cir. 2008), quoting *Shappell's Inc. v. Perry (In re Perry),* 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000).

C. Debtor's Burden of Proof. If a creditor establishes its *prima facie* § 727(a)(5) case, the debtor must satisfactorily explain the loss of its assets, so the court

does not have to speculate about what happened to them, or about the veracity of the explanation. *In re Cooper*, 399 B.R. 637, 653 (Bankr. E.D. Ark. 2009). *See also Phouminh*, 339 B.R. at 247-48 (once creditor has shown that a loss or shrinkage of assets actually occurred, the burden shifts to the debtor to explain the loss or deficiency in a satisfactory manner); *Sendecky*, 283 B.R. at 766 ("[i]f a party demonstrates a deficiency of assets, the burden shifts to the debtor to explain the loss. If the explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing."). In *Carlson,* 2008 WL 8677441, at * 5, the Tenth Circuit stated that "Section 727(a)(5) requires a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor" (quoting *Damon v. Chadwick (In re Chadwick),* 335 B.R. 694, 703 (W.D. Wis. 2005)).

"As is the case with Section 727(a)(3), no requirement exists that debtors act fraudulently or intentionally to sustain an objection to discharge based on Section 727(a)(5)." *Carlson,* quoting *Perry,* 252 B.R. at 549. However, "[w]hen deciding whether a debtor's explanation is satisfactory for purposes of Section 727(a)(5), the issue is whether the explanation satisfactorily describes what happened to assets; not whether what happened to assets was proper." *Id.* "[T]he debtor does not need to justify the wisdom or prudence in the disposition of assets". *Carlson*, quoting *Buckeye Retirement Props of Indiana, LLC v. Tauber (In re Tauber)*, 349 B.R. 540, 564 (Bankr. N.D. Ind. 2006).

## VI. DISCUSSION

A. Plaintiff's § 727(a)(3) Claim.

1. Plaintiff's *Prima Facie* Case. The Court finds that Plaintiff has carried its burden of establishing a *prima facie* case under § 727(a)(3). There is no question Defendants' have very poor records concerning the sale of the Assets and how the sales proceeds were spent. Plaintiff has shown that, from the records before the Court, it is impossible to ascertain Defendants' financial condition and material business transactions.

2. Defendants' Justification for Lack of Records.

a. Ms. Scheid's Duty to Keep Records. Defendants argue that Ms. Scheid's discharge should not be denied because she was not involved in Defendants' record-keeping. Response, pp. 7-8, 13. The Court acknowledges Plaintiff's argument that Ms. Scheid's lack of financial acumen and involvement portrayed in the Response is at odds with her e-mail correspondence to Plaintiff's loan officer. Reply, p. 3. Nevertheless, the Court finds there is a fact issue about Mrs. Scheid's involvement in the Defendants' personal financial affairs, and/or the sale of the Assets and spending of the sales proceeds. *See, e.g., Cox v. Lansdowne (In re Lansdowne)*, 904 F.2d 1399, 1403 (9th Cir. 1990) (bankruptcy court must consider wife's justification that she relied on husband to keep records).[8]

b. Loan 607 Proceeds. Plaintiff alleges that Defendants cannot explain what happened to the "Loan 607" proceeds. Motion, p. 19. Defendants

---

[8] There is support for the denial of one spouse's discharge under § 727(a)(3) but not the other. *See, e.g., Cox*, 41 F.3d at 1298-1300; *In re Goodman*, 227 B.R. 626, 631 (Bankr. E.D. Pa. 1998), citing *In re Goldstein*, 123 B.R. 514, 523 (Bankr. E.D. Pa. 1991); *In re MacPherson*, 101 B.R. 324, 326 (Bankr. M.D. Fla. 1989), *aff'd*, 129 B.R. 259 (M.D. Fla. 1991).

-14-

counter that the needed records are in computers seized by Plaintiff and another creditor. Response, pp. 6, 12. This argument raises a genuine fact issue. *See, e.g., Ford Motor Credit Co. v. Branch (In re Branch),* 54 B.R. 211 (Bankr. D. Colo. 1985) (discharge granted where records were accidentally destroyed in a fire); *In re Ogden,* 251 B.R. 441, at *7 (alleged seizure of records by county attorney could be justification).

    c. $12,000 Withdrawal. Plaintiff argues that Defendants cannot account for $12,000 cash withdrawn from their Peoples Bank account on July 29, 2011. Motion, p. 17. Defendants respond that the $12,000 was used to make a down payment on their house in Texas. Response, p. 11; Scheid Affidavit, p. 11. This is consistent, at least to some extent, with Mr. Scheid's deposition testimony. Doc. 30-3, p. 9. Presumably there is a closing statement or other documentary evidence of Defendants' purchase of their Texas house. The Court finds that there is a genuine fact issue about the $12,000 withdrawal.

    d. Ownership of the Assets. Plaintiff argues that Defendants have no records showing ownership of the 1995 Harley, 1998 Harley, 2007 BMW motorcycle, 2000 Harley Trailer, 2008 Honda ATV, or Mechanics Tools. Motion, pp. 8-10. Defendants respond with copies of bills of sale, title applications, sales invoices, titles, and affidavit testimony relating to ownership of these Assets. The Court finds that there is, at a minimum, a genuine fact issue about ownership.

    e. Disposition of the Assets. Plaintiff argues that Defendants have no records showing their receipt of proceeds when they sold the Assets. Motion, pp. 8-12. Defendants respond with some documentary evidence related to the sale of

-15-

the 2009 Dodge Challenger and the 2007 BMW motorcycle, and affidavit testimony of Mr. Scheid related to the other sales. Scheid Affidavit pp. 4-10 and Exhibits A3 and A10. Defendants also argue that (i) Mr. Scheid reasonably thought he could dispose of his (unencumbered) personal property in any legal manner; (ii) it is not typical to keep records of yard sale transactions; and (iii) Defendants have *some* records. The Court finds that Defendants have raised (although perhaps not by much) a genuine fact issue.

        f.    <u>Accounting for the Assets Sales Proceeds</u>. Finally, Plaintiff argues that Defendants have no records showing how they spent the proceeds from the sales of the Assets. Motion, pp. 8-12. Defendants respond with Mr. Scheid's affidavit testimony listing categories and amounts of expenses paid with the proceeds, such as remodeling work ($14,000); windows purchased ($18,330.78); stucco work ($6,000); Texas house down payment ($12,000), and nine other categories. Scheid Affidavit, pp. 10-11. Attached to Mr. Scheid's affidavit are bills from Marvin Design Studios and Charles E. Martin Builders. Scheid Affidavit, Exhibits A13 and A14. This evidence does not appear to be a sufficient justification for the failure to keep records. Nevertheless, the Court would like to take testimony and documentary evidence before ruling.

    B.    <u>Plaintiff's § 727(a)(5) Claim</u>.

        1.    <u>Plaintiff's *Prima Facie* Case</u>. The Court finds that Plaintiff has carried its burden of establishing a *prima facie* case under § 727(a)(5). Plaintiff has shown that there was "an unusual or unexplained disappearance of assets shortly before the debtor filed bankruptcy." *Carlson,* 2008 WL 8677441, at *5. Had Defendants

filed bankruptcy in February, 2011, immediately after they consulted with bankruptcy counsel,[9] the Assets would have been part of their bankruptcy estate, and for the most part available to unsecured creditors. By the time Defendants filed their bankruptcy case a year later, all the Assets were gone, as were the proceeds from their alleged sales. Plaintiff has carried its burden of showing an unusual or unexplained loss to assets of substantial value.

2. <u>Defendants' Explanation for Loss of Assets</u>. Defendants explain the loss of the Assets as set forth in Section VI(A)(2)(f) above. The Court finds that the explanation raises a fact issue. In addition, the "innocent spouse" defense raises a fact issue about the request to deny Ms. Scheid's discharge.

C. <u>Reluctance of Courts to Grant Summary Judgment in §§ 727(a)(3) and (a)(5) Objection</u>. Denial of discharge is not something to be done lightly, and the case law in this area encourages trial courts to hear all the evidence before reaching a final decision. *See, e.g., In re Ogden, 251 B.R. 441, at \*6* (reversing the bankruptcy court grant of summary judgment on creditor's § 727(a)(3) claim); *Settembre v. Fidelity & Guaranty Life Ins. Co.*, 2007 WL 4546669, at \*4 (W.D. Ky. 2007), appeal dismissed, 552 F.3d 438 (6th Cir. 2009) (same); *In re French,* 499 F.3d 345, 354 (4th Cir. 2007) (same); *In re Schifano,* 378 F.3d 60 (1st Cir. 2004) (reversing trial court's summary judgment in debtor's favor on creditor's §727(a)(3) claim). The Court think it would be better, all things considered, to try Plaintiff's § 727 objections.

VII. CONCLUSION

The Court would like to hear Defendants' testimony about when, where, why, and

---

[9] Motion, p. 9.

for how much they sold the Assets, why almost all of the transactions were in cash, why they did not deposit the cash into their bank accounts, why they kept no records, whether there is sufficient justification for their failure to do so, and whether they can explain to the Court's satisfaction what happened to the cash proceeds from the sale of the Assets and the $12,000 cash withdrawal.

The Court will deny the Motion, except to make a finding about the amount of Plaintiff's claim against Defendants. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. A separate order will be entered.

Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: March 5, 2013.

Copy to:

James R. Jurgens
100 LaSalle Circle, Suite A
Santa Fe, New Mexico 87505

Nephi Hardman
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109